UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

TNS MEDIA RESEARCH, LLC (d/b/a
KANTAR MEDIA AUDIENCES) and
CAVENDISH SQUARE HOLDING, B.V.,

          Plaintiffs,

    - against -

TRA GLOBAL, INC. (d/b/a TRA, Inc.),

          Defendant.

------------------------------------------------------X

TRA GLOBAL, INC. (d/b/a TRA, Inc.),

          Counterclaim-Plaintiff,

    - against -

TNS MEDIA RESEARCH, LLC (d/b/a
KANTAR MEDIA AUDIENCES);
CAVENDISH SQUARE HOLDING, B.V.;
WPP PLC; WPP GROUP USA, INC.;
KANTAR GROUP LTD.; and KANTAR
RETAIL AMERICA, INC.,

          Counterclaim-Defendants.

------------------------------------------------------

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/7/14
```

**OPINION AND ORDER**

**11 Civ. 4039 (SAS)**

SHIRA A. SCHEINDLIN, U.S.D.J.:

I.    INTRODUCTION

       In 2011, Plaintiffs TNS Media Research, LLC d/b/a Kantar Media

Audiences and Cavendish Square Holdings B.V. (collectively "Kantar") sued TRA

Global, Inc. ("TRA"), seeking a declaratory judgment that Kantar's products do not infringe TRA's patents. TRA brought counterclaims for (1) patent infringement, (2) misappropriation of trade secrets, (3) aiding and abetting breach of fiduciary duty, and (4) breach of contract. Kantar then moved for summary judgment on the patent and trade secret counterclaims and for "no damages on TRA's fiduciary duty, trade secrets, and breach of contract counterclaims."[1]

On November 25, 2013, this Court granted summary judgment as to "non-infringement, trade secrets, and non-patent damages."[2] In so ruling, this Court noted that:

> [E]xcluding the frozen market theory of damages does not dispose of TRA's non-patent claims. TRA notes in its opposition brief that it may be entitled to [1] nominal damages for its breach of contract claim; [2] attorneys' fees for its breach of fiduciary duty claim; and [3] equitable relief for both claims. [Kantar does] not dispute this point in [its] reply brief.[3]

At the December 20, 2013 conference, the Court directed the parties to confer regarding the remedies still available to TRA, and, to the extent they disagreed, to make a limited motion. Now before the Court is Kantar's motion to

---

[1] Kantar's Notice of Motion for Summary Judgment, Dkt. No. 122.

[2] *TNS Media Research, LLC v. TRA Global, Inc.*, No. 11 Civ. 4039, 2013 WL 6170643, at *1 (S.D.N.Y. Nov. 25, 2013).

[3] *Id.* at *27.

limit TRA's remedies and strike its jury demand.  For the reasons stated below,

Kantar's motion is granted in part and denied in part.

## II.    TRA's Requests

### A.    Injunctive Relief

TRA claims it is entitled to injunctive relief for its fiduciary duty and

contract claims.[4]  TRA's theory for aiding and abetting breach of fiduciary duty is

that "[Kantar] utilized and manipulated the representative it had appointed to

TRA's Board to obtain unfettered and improper access to TRA's confidential

information and trade secrets."[5]  But because TiVo acquired TRA in 2012, Kantar

no longer has a representative on TRA's board.[6]  Without a fiduciary to enjoin,

TRA has no basis for injunctive relief.[7]

---

[4]      See TRA's Memorandum in Opposition to Motion to Limit Remedies and Strike Jury Demand ("TRA Mem.") at 16-20.

[5]      Answer, Defenses, and Supplemental and Amended Counterclaims for Patent Infringement, Aiding and Abetting Breach of Fiduciary Duty, Misappropriation of Trade Secrets, and Breach of Contract ("TRA Answer") ¶ 131.

[6]      See Kantar's Memorandum in Support of Its Motion to Limit TRA's Remedies and Strike Jury Demand ("Kantar Mem.") at 18.  TRA does not contest this fact.

[7]      See Fox v. Board of Trustees of State Univ. of N.Y., 42 F.3d 135, 140 (2d Cir. 1994) (holding that student's claim for injunctive relief against university was moot because student had graduated); Ringgold v. United States, 553 F.2d 309, 310 (2d Cir. 1977) (holding that cadet's request to enjoin the military was moot because he had resigned and a decision by the court "would not now affect him").

Nor is TRA entitled to injunctive relief for its breach of contract claims.  TRA alleges breaches of (1) a 2008 Non-Disclosure Agreement ("NDA"), (2) a 2009 NDA, (3) a 2007 NDA, and (4) an End-User License Agreement ("EULA") for TRA's product.[8]  The first two have expired, rendering injunctive relief moot.[9]  Specifically, the 2008 NDA expired in September 2013 — "thirty months from the date of the disclosure."[10]  The date of the last disclosure could have been no later than March 2011 when Kantar launched its accused products.  The 2009 NDA expired on September 3, 2010, eighteen months after its execution on March 3, 2009.[11]

Further, injunctive relief on the remaining two contracts is foreclosed by the Court's November 25, 2013 Opinion and Order.  The 2007 NDA allowed Kantar to access TRA's confidential information and "develop[] . . . projects relating to the [confidential information] . . . . independently of the information

---

[8]    *See* TRA Answer ¶¶ 144-150.

[9]    *See Carbon Fuel Co. v. United Mine Workers of America*, 444 U.S. 212, 214 n.2 (1979) ("The contracts have expired, and the question of injunctive relief is out of the case."); *Planned Parenthood of Dutchess-Ulster, Inc. v. Steinhaus*, 60 F.3d 122, 125 (2d Cir. 1995) (noting that "request for injunctive relief is moot" where contract had expired).

[10]    2008 NDA, Ex. 2 to Declaration of Amy T. Brantly in Support of TRA's Opposition to Motion to Limit Remedies and Strike Jury Demand ("Brantly Decl."), ¶ 8.

[11]    *See* 2009 NDA, Ex. 3 to Brantly Decl., ¶ 9.

provided . . . ."[12]  TRA argues that Kantar used the information to copy TRA's

method of generating target indices, but the Court has held that Kantar's method is

different and granted summary judgment as to non-infringement.[13]  Similarly, TRA

alleges that Kantar breached the EULA by using confidential information it learned

while accessing TRA's TRAnalytics platform.[14]  However, the Court found "no

evidence in the record that [Kantar's] Accused Products made use of any of the

technical information alleged by TRA," specifically with regards to TRAnalytics.[15]

        Finally, TRA's request for a "head start injunction" is moot.  Such

relief would enjoin Kantar for "the length of time it would have taken for [Kantar]

to incorporate the trade secret had it not wrongfully used the information prior to

public disclosure."[16]  TRA's theory is Kantar was able to develop a competing

product in one year instead of two because Kantar used TRA's confidential

---

[12]      2007 NDA, Ex. 1 to Brantley Decl., ¶ 5.

[13]      *See TNS Media Research*, 2013 WL 6170643, at *27 (holding that
"[Kantar's accused products do not] practice the purchase data limitation, . . . the . .
. double-blind matching, or make use of a thesaurus" and thus, do not infringe
TRA's patents).

[14]      *See* TRA Answer ¶¶ 145-151.

[15]      *TNS Media Research*, 2013 WL 6170643, at *25.

[16]      *Web Graphics, Inc. v. Jos. Hunkeler, Ltd.*, 682 F.2d 59, 60 (2d Cir.
1982).

information.[17]  Given that Kantar launched its accused products in March 2011,
any supposed "head-start" period has now elapsed.[18]

### B.    Attorneys' Fees

TRA argues it is entitled to a trial on its claim for attorneys' fees.
Federal Rule of Civil Procedure 54(d)(2) requires that a request for attorneys' fees
be made by motion after entry of judgment except when "the substantive law
requires those fees to be proved at trial as an element of damages."  TRA contends
that attorneys' fees are required by the "substantive law" because Kantar breached
the EULA when it "fail[ed] to cooperate and instead [] fil[ed] this lawsuit and/or []
forc[ed] TRA to file a lawsuit to regain control over its confidential information."[19]
The Court has already rejected this argument based on the *Noerr-Pennington*
doctrine because Kantar had a good faith basis for instituting suit.[20]  Further,
neither the NDAs nor the EULA include a provision for attorneys' fees.[21]  Thus,

---

[17]    *See* TRA's Memorandum in Opposition to Motion for Summary
Judgment ("TRA SJ Opp.") at 15.

[18]    *See Web Graphics*, 682 F.2d at 60 (affirming denial of injunction
because eight month "head start period has expired now").

[19]    TRA Mem. at 20.

[20]    *See TNS Media Research*, 2013 WL 6170643, at *26.

[21]    *See F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250,
1263 (2d Cir. 1987) ("[C]ontractual provisions for the payment of attorneys' fees
[are] strictly construed, and general language will not be sufficient to warrant an

TRA may request attorneys' fees only by motion after judgment has entered.

## C. Nominal Damages

TRA contends that it is entitled to nominal damages on its contract and fiduciary duty claims. Kantar responds that TRA waived its right to nominal damages by failing to plead it explicitly. But a complaint that "seeks only damages can include nominal damages."[22] Therefore, TRA may be able to recover nominal damages on its remaining claims.[23]

## D. Other Remedies

### 1. Compensatory Damages

Although the Court's November 25, 2013 Opinion and Order named only injunctive relief, attorneys' fees, and nominal damages as remaining

---

award for a type of expense that is not customarily reimbursed.").

[22] *Dean v. Blumenthal*, 577 F.3d 60, 66 n.3 (2d Cir. 2009).

[23] *See T & N PLC v. Fred S. James & Co.*, 29 F.3d 57, 60 (2d Cir. 1994) ("[N]ominal damages are always available for breach of contract."); *Action House, Inc. v. Koolik*, 54 F.3d 1009, 1013 n.4 (2d Cir. 1995) (noting that plaintiff could have "requested an award of nominal damages in this case [on its breach of fiduciary duty claim]"). Although TRA may be entitled to a small nominal damages award, it is not entitled to a jury trial. *See Van Wie v. Pataki,* 267 F.3d 109, 115 n.4 (2d Cir. 2001) ("[I]n nominal damages cases, when such damage requests are below twenty dollars, there is no right to a jury trial."). TRA argues that if it is awarded $1 for each of its "twenty-four categories of confidential information that Kantar used to compete with TRA," it would meet the $20 threshold. TRA Mem. at 23. But TRA's argument is unsupported by law. Nor is it clear how these "categories" relate to either of its *remaining* claims.

remedies, TRA claims it is nevertheless entitled to compensatory damages.  TRA

now insists that the "frozen market" theory was not its only damages theory and

asserts two alternative theories: "loss of exclusive use" and "unjust enrichment."[24]

Yet, during the briefing of the summary judgment motion, TRA asserted that its

"actual theory" was that Kantar's "bad acts froze the market for TRA," causing

TRA's "diminution in value."[25]  TRA insisted it was not seeking "lost profits,"

"lost sales," or "price erosion."[26]  As a result, Kantar challenged all non-patent

damages, and the Court granted Kantar's motion.[27]

      In any event, TRA's alternative theories fail as a matter of law.

TRA's purported "loss of use" theory is that "a loss in the exclusive value of

[TRA's] investment" was "part of TRA's overall loss in value."[28]  TRA neglected

to raise this theory in opposition to summary judgment and cannot do so now.[29]

---

[24]    TRA Mem. at 3-4.

[25]    TRA SJ Opp. at 17-18.

[26]    *Id.* at 16.

[27]    *See TNS Media Research*, 2013 WL 6170643, at *1.

[28]    Expert Report of Melissa Bennis ("Bennis Report"), Ex. 6 to Brantly
Decl., at 94.

[29]    *See Emigra Grp., LLC v. Fragomen, Del Rey, Bernsen & Loewy, LLP*,
612 F. Supp. 2d 330, 349 (S.D.N.Y. 2009) ("Just as a moving party will not
be heard to advance a new argument for the first time in its reply brief, a non-moving
party should not be heard to advance a new argument in opposition to a motion

More importantly, as the Court has already ruled, TRA failed to prove that Kantar caused *any* of TRA's loss in value.[30]

Next, TRA's "unjust enrichment" theory is that Kantar received the benefit of TRA's research and development while spending much less on its own research and development.[31]  "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish 1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that equity and good conscience require restitution."[32]  In addition, TRA must "show a causal nexus between a defendant's enrichment and [TRA's] own expense that goes beyond mere correlation."[33]

TRA's expert, Melissa Bennis, dedicates one paragraph of her 131 page report to the unjust enrichment theory, stating that she "cannot quantify the[]

---

after the close of briefing and oral argument.").

[30]    *See TNS Media Research*, 2013 WL 6170643, at *26 (The "conclusion that the 'bad acts' of [Kantar] caused TRA to lose value has no basis.").

[31]    *See* Bennis Report at 96-97.

[32]    *Landesbank Baden–Wurttemberg v. Goldman, Sachs & Co.*, 478 Fed. App'x 679, 683 (2d Cir. 2012) (citing *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000)).

[33]    *Poller v. BioScrip, Inc.*, No. 11 Civ. 1675, 2013 WL 5354753, at *24 (S.D.N.Y. Sept. 25, 2013) (internal citations omitted).

benefits [of Kantar's alleged unjust enrichment] with specificity."[34]  Bennis

suggests that TRA spent $23 million on research and development while Kantar

spent only $300,000 and concludes that "[Kantar] was unjustly enriched" based on

the differential between these two figures.[35]  Not only does Bennis fail to quantify

the "benefit" Kantar received from selling its accused products, but she also fails to

assert any causal nexus between TRA's $23 million expense and Kantar's

"benefit."[36]  TRA may not wait until trial to offer new computations for previously

undisclosed damages theories.[37]  As such, TRA is not entitled to compensatory

damages under any theory.

### B.    Punitive Damages

Finally, TRA insists that it is entitled to punitive damages on its

remaining claims.   While a plaintiff who is awarded only nominal damages is not

*per se* precluded from recovering punitive damages, he must satisfy the "'the very

---

[34]     Bennis Report at 97.

[35]     *Id.* at 96-97.

[36]     Kantar notes that the revenue it received from sales of the accused
products totaled only $450,000. *See* Kantar Mem. at 7-8.  TRA does not dispute
this amount.

[37]     *See Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006)
("Rule 26(a) requires a party to provide a computation of any category of damages
voluntarily, i.e., 'without awaiting a discovery request.'").

high threshold of moral culpability.'"[38]   New York law requires a showing "the defendant 'acted with actual malice involving an intentional wrongdoing' or where such conduct amounted to a 'wanton, willful or reckless disregard of plaintiffs' rights.'"[39]  Moreover, "the recklessness that will give rise to punitive damages must be close to criminality."[40]

In support of its punitive damages demand, TRA cites several documents which the Court already considered during summary judgment.[41]  *First,* TRA asserts that these documents demonstrate Kantar's intention to "slow and frustrate TRA's ability to obtain financing" or "starve" TRA for cash.[42]  However, TRA presents no evidence that Kantar acted on its alleged intentions.  To the

_____

[38]   *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.,* 725 F.3d 65, 128 (2d Cir. 2013) ("MTBE") (quoting *Giblin v. Murphy,* 73 N.Y.2d 769, 772 (1988)).  *Accord Colavito v. New York Organ Donor Network, Inc.,* 438 F.3d 214, 221 (2d Cir. 2006) ("[A] plaintiff can ordinarily recover punitive damages for wanton and willful conduct even when there are only nominal compensatory damages.").

[39]   *In re MTBE,* 725 F.3d at 127 (quoting *Ligo v. Gerould,* 665 N.Y.S.2d 223, 224 (4th Dep't 1997)).

[40]   *Id.* (citing *Roginsky v. Richardson–Merrell, Inc.,* 378 F.2d 832, 843 (2d Cir. 1967)).

[41]   *See* TRA Mem. at 11-12.

[42]   *Id.*

-11-

contrary, the evidence indicates that Kantar worked to expedite TRA's financing.[43]

Kantar invested over \$2 million into TRA's subsequent financing rounds in May

2009 and May 2010.[44]  Like other investors who began to doubt TRA's value,

Kantar decided to stop financing TRA.  Such a decision cannot amount to

"egregious" conduct.

     *Second*, TRA relies on several emails that purportedly suggest that

Kantar personnel disclosed confidential information in violation of the NDAs.[45]  In

fact, these emails and others show that Mark Lieberman, TRA's CEO, authorized

these disclosures.[46]  At a minimum, Kantar's good faith belief that the disclosures

were authorized negates TRA's claim for punitive damages.[47]

---

[43]    *See* 2/21/09 Email from Jeff Krentz, Kantar's Executive Vice President of Strategy and Corporate Development, to Sheila Spence, Kantar's Senior Vice President of Corporate Development, Ex. 10 to Brantly Decl., at 1.

[44]    *See* TRA Capitalization Table, Ex. A to the Declaration of Eric Rutt, counsel for Kantar, in Support of Kantar's Motion for Summary Judgment.

[45]    *See* TRA Mem. at 11-12.

[46]    *See* 3/23/09 Email exchange between Spence, Terry Kent, Kantar Media's Chief Executive Officer ("CEO"), and Bill Lederer, Kantar Media's Chief Operating Officer, Ex. 8-B to Brantly Decl.; 5/1/09 Email from Kent to Dean DeBiase, TNS Media's CEO, Ex. 8-C to Brantly Decl.; 3/22/09 Email from Mark Lieberman to Spence, Ex. M to Declaration of Eric Rutt in Support of Kantar's Memorandum to Limit TRA's Remedies and Strike Jury Demand ("Rutt Reply Decl.").

[47]    *See Tanbro Fabrics Corp. v. Deering Milliken, Inc.*, 39 N.Y.2d 632, 638 (1976).

*Finally*, TRA cites an email to show that Kantar tasked Sheila Spence, a Kantar-appointed TRA board member, with "gathering evidence to invalidate TRA's patent."[48] But Spence is not listed as a recipient on the email and testified that she first saw the document at her deposition.[49] In any event, TRA presents no evidence that Spence actually gathered any information. As such, TRA is not entitled to punitive damages.

## III. CONCLUSION

In light of the foregoing, Kantar's motion is granted in part and denied in part. The Clerk of the Court is directed to close this motion (Dkt. No. 166). A conference is scheduled for April 18 at 4:30 p.m. to discuss TRA's pursuit of nominal damages.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           April 7, 2014

---

[48]     TRA Mem. at 12.

[49]     *See* 5/20/10 Email from Andy Brown, Kantar Media's Chairman, to Richard Marks, Kantar Media's Global CEO, George Shababb, Kantar Media's President, and Krentz, Ex. 9 to Brantly Decl.; 5/23/12 Deposition of Spence, Ex. N to Rutt Reply Decl., at 186-187.

-13-

- Appearances -

**For Defendant and Counterclaim-Plaintiff TRA:**

Nathan Lowenstein, Esq.
Perry Mark Goldberg, Esq.
Trevor Stockinger, Esq.
Goldberg, Lowenstein & Weatherwax LLP
11400 West Olympic Blvd., Suite 400
Los Angeles, California 90064
(310) 203-9222

**For Plaintiffs and Counterclaim-Defendants the WPP Companies:**

Marc Rachman, Esq.
Andrew Keisner, Esq.
Davis & Gilbert LLP
1740 Broadway
New York, New York 10019
(212) 468-4800

Michael A. Albert, Esq.
John Strand, Esq.
Charles Steenburg, Esq.
Eric Rutt, Esq.
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Ave.
Boston, Massachusetts 02210
(617) 646-8000