IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TNS MEDIA RESEARCH, LLC (d/b/a) KANTAR MEDIA AUDIENCES) and CAVENDISH SQUARE HOLDING, B.V., <br><br> Plaintiffs, <br><br> v. <br><br> TIVO RESEARCH AND ANALYTICS, INC. (d/b/a TRA, Inc.), <br><br> Defendant. | CIVIL ACTION NO. 11 CIV 4039 (SAS) <br><br> **ECF CASE** |
| TIVO RESEARCH AND ANALYTICS, INC. (d/b/a TRA, Inc.), <br><br> Counterclaim-Plaintiff, <br><br> v. <br><br> TNS MEDIA RESEARCH, LLC (d/b/a KANTAR MEDIA AUDIENCES) and CAVENDISH SQUARE HOLDING, B.V.; WPP PLC; WPP GROUP USA, INC.; KANTAR GROUP LTD; KANTAR RETAIL AMERICA, INC., <br><br> Counterclaim-Defendants. | |

## TRA'S MEMORANDUM OF LAW IN SUPPORT OF MOTION

## FOR DISQUALIFICATION UNDER 28 U.S.C. § 455(a)

## TABLE OF CONTENTS

INTRODUCTION ………………………………………………………..…………… 1

BACKGROUND…………………………………………………………..…..…………… 3

ARGUMENT…………………………………………………………..……………… 5

A.    Legal Standard……………………………………………….………………5

B.    A Judge's Planned Post-Judicial Representation of Parties or Closely-Related Entities Appearing Before Her Creates an Appearance of Partiality………………..………..…..6

C.    Your Honor's Future Law Firm Likely Represents Parties, or Closely-Related Entities, to This Litigation..…………………………………….…………….……………10

D.    Your Honor's Choices to Limit Disclosure of Information Related to Your Future Employment Affirms the Need for Disqualification..………………..…………...…11

CONCLUSION……………………………………………………………...……... 13

# **TABLE OF AUTHORITIES**

## **CASES**

*Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326 (2d Cir. 1987)…………………….……………..5

*Berman v. Neo@Ogilvy LLC*, 801 F.3d 145 (2015)……………………………………….……..…11

*Chase Manhattan Bank v. Affiliated FM Ins. Co.*, 343 F.3d 120 (2d Cir. 2003)……………6-8, 14

*Faulkner v. Nat'l Geographic Enterprises Inc.*, 409 F.3d 26 (2d Cir. 2005)……………………10

*In re Certain Underwriter*, 294 F.3d 297 (2d Cir. 2002)………………………………………6, 7

*In re Int'l Bus. Machines Corp.,* 45 F.3d 641 (2d Cir. 1995)…………………….……………..4-5

*In re Int'l Bus. Machines Corp.,* 618 F.2d 923 (2d. Cir. 1980)………………….……………..5

*Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988)………………………….2, 5

*Liteky v. United States,* 510 U.S. 540 (1994)……………………………………………….…..5

*Nichols v. Alley*, 71 F.3d 347 (10th Cir. 1995)……………………………………………….9

*Pepsico, Inc. v. McMillen*, 764 F.2d 458 (7th Cir. 1985)…………………………………6, 8-9

*Scott v. United States*, 559 A.2d 745 (D.C. 1989)………………………………….……11

*United States v. Amico*, 486 F.3d 764 (2d Cir. 2007)…..…………….……….……..…..passim


## **RULES**

28 United States Code § 455(a)……..………..…………………………….……….…passim


## **MISCELLANEOUS**

Charles Gardner Geyh, *Judicial Disqualification: An Analysis of Federal Law* 17 (Federal

Judicial Center 2d ed. 2010)……………………………………………………………5-8

Conflicts of Interest Relating to Of Counsel Attorneys, Opinion No. 793 (New York State Bar Association Committee on Professional Ethics March 17, 2006)…………………...………8

Pursuit of Post-Judicial Employment, Advisory Op. No. 84 (Judicial Conference Committee on Codes of Conduct June 2009)………………………………………………...……1, 6-7

Stephen B. Burbank et al., *Leaving the Bench 1970–2009: The Choices Federal Judges Make, What Influences Those Choices, and Their Consequences*, 161 U. Pa. L. Rev. 1 (2012)…1, 9

## I.   INTRODUCTION

A federal judge pursuing post-judicial employment must "be sensitive to public perspective and to obligations under the Code [of Conduct for United States Judges]."  Pursuit of Post-Judicial Employment, Advisory Op. No. 84 (Judicial Conference Committee on Codes of Conduct June 2009).  Although Your Honor may negotiate for, and accept, post-judicial employment while still on the federal bench, it is Your Honor's obligation to insure that your "impartiality in the handling of the case[s on your docket] cannot reasonably be questioned."  *Id*.  That obligation requires Your Honor's immediate disqualification from the present case under 28 U.S.C. § 455(a).

Your Honor has announced a future employment relationship with an unidentified "large New York City law firm."  Based on available information, the most reasonable conclusion is that Your Honor's future firm – and therefore soon Your Honor[1] – represents parties or their closely-related entities involved in this litigation.  There are over 360 companies under the umbrella of the WPP holding company, many of which are headquartered in New York City. *See* WPP, *Our Companies*, http://www.wpp.com/wpp/companies/.  Unsurprisingly, a quick review of publicly-available information demonstrates numerous attorney-client relationships between these companies and large New York law firms.  The odds overwhelmingly suggest that Your Honor's future law firm represents one or more of the WPP-affiliated companies.

---

[1] *See* Conflicts of Interest Relating to of Counsel Attorneys, Opinion No. 793 (New York State Bar Association Committee on Professional Ethics March 17, 2006) ("If the law firm reaches the conclusion that an 'of counsel' designation is appropriate, it should bear in mind that for purposes of analyzing conflicts of interest, 'of counsel' relationships are treated as if the 'counsel' and the firm are one unit." (quotations and citations omitted)).

Similarly, Your Honor has not inquired about your future law firm's representation of TiVo Inc. ("TiVo"), which is represented by multiple large New York law firms.  Given Kantar's contention in its pending motion to dismiss that standing must be evaluated with regard to TiVo, there can be little doubt that if the Court denies their pending motion and they later discover your future firm represents TiVo, they would seek disqualification and the vacating of the decision on the motion to dismiss.

A reasonable person knowing these facts would have reason to question the partiality of any future actions by Your Honor in this matter.  *See United States v. Amico*, 486 F.3d 764, 775 (2d Cir. 2007) (requiring disqualification under Section 455(a) if a reasonable person would question the judge's impartiality).  Specifically, a reasonable person might think that decisions in this case could reflect a desire to curry favor with Your Honor's soon-to-be-clients.  Additionally, to the extent Your Honor had discussions or negotiations with other law firms regarding future employment and those law firms represent parties involved in this litigation, or their related entities, disqualification also would be warranted under existing precedent to avoid the appearance of partiality.

To be clear, TRA, Inc. ("TRA") does not suggest that Your Honor is in fact biased or actually would use this case as a means of currying favor with your future clients.  Unlike Section 455(b), however, Section 455(a) does not depend upon actual partiality but instead requires disqualification simply for the appearance of partiality.  *See Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860 (1988).  That appearance undoubtedly exists when the same person is one day a judge in a matter involving a party and virtually the next day is trying to retain and attract the business of that party or its closely-related entities.  The risk of an appearance of partiality is particularly acute here, where Your Honor has declined to name your

future law firm and therefore has provided no means for independent verification of impartiality. Your Honor's right to accept post-judicial employment with an unnamed entity is accompanied by the corresponding duty to avoid any potential appearance of partiality.  Disqualification under Section 455(a) is therefore warranted.

## II.  BACKGROUND

In March 2016, Your Honor announced your intention to step down from the federal bench as of April 29, 2016 to join a "large New York City law firm."  Natalie Rodriguez, *NY Federal Judge Shira Scheindlin Stepping Down*, Law360 (Mar. 23, 2016), http://www.law360.com/articles/775338/ny-federal-judge-shira-scheindlin-stepping-down.  Your Honor has declined to name the law firm.  *Id*.

On March 30, 2016, counsel for TRA wrote to Your Honor's chambers, suggesting that it would be prudent to reassign the present matter as soon as possible because, among other reasons, it would avoid any potential conflict of interest issues.  (Ex. A, Declaration of Lynne M. Brennan in Support of TRA, Inc.'s Motion for Disqualification ("Brennan Declaration")).  On April 4, 2016, counsel for Counter Defendants ("Kantar") responded, addressing only the alleged lack of "an actual conflict," ignoring the appearance of partiality created by Your Honor's post-judicial employment plans, and citing an inapposite case dealing with pre-judicial employment rather than post-judicial employment.  (Ex. B, Brennan Declaration.)

After two weeks without hearing from chambers regarding its March 30, 2016 letter, counsel for TRA again wrote to chambers on April 14, 2016, raising its concern that Your Honor's post-judicial employment created the appearance of partiality and requesting a pre-motion conference for a proposed motion to disqualify pursuant to 28 U.S.C. § 455(a).  (Ex. C, Brennan Declaration.)

3

Your Honor's law clerk responded on April 15, 2016, stating that your future law firm does not represent any named parties in this litigation.  (Ex. D, Brennan Declaration.)  After counsel for TRA responded by noting the need for a broader inquiry into related entities, (Ex. E, Brennan Declaration), Your Honor's law clerk relayed your statement that because you have no present financial or professional interest in your future firm, you allegedly cannot have an actual conflict of interest or even the appearance of a conflict of interest.  (Ex. F, Brennan Declaration.) Your Honor's law clerk further informed the parties that you "intend[] to proceed to adjudicate Kantar's pending motion to dismiss."  (*Id*.)

TRA understands its communication with Your Honor's law clerk to have exhausted its pre-motion conference obligations under Individual Rules IV(A).  Those communications suggested that Your Honor's response "obviates the need for a response letter from Kantar." (Ex. D, Brennan Declaration.)  They also made clear that this "[m]otion[] will [not] be resolved at the pre-motion conference."  *See* Individual Rule IV(A).  Despite Your Honor's suggestion that you would inquire about your future law firm's representation of WPP-related entities, you also made clear that you will not recuse yourself even if such representation exists and instead will resolve Kantar's pending motion to dismiss.  (Ex. F, Brennan Declaration.)

In light of Your Honor's position and the time-sensitive nature of these issues, TRA has no choice but to file the present Motion for Disqualification Under 28 U.S.C. § 455(a).[2]  Indeed, TRA is required to bring its disqualification motion "at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim," lest it be accused of

---

[2] Judicial use of pre-motion filing requirements to prevent or limit parties from exercising statutory rights has come under heavy criticism recently.  *See* Andrew Chung, *Under the patent spotlight, Texas federal judge drops controversial rule*, REUTERS LEGAL (Nov. 13, 2015) (describing controversy regarding district judge's requirement that parties "request his permission before filing a motion to dismiss an infringement case based on Section 101 of the Patent Act").

improperly "holding back a recusal application as a fall-back position in the event of adverse rulings on pending matters," such as Kantar's motion to dismiss. *See In re Int'l Bus. Machines Corp.*, 45 F.3d 641 (2d Cir. 1995).

## III. ARGUMENT

### A. Legal Standard

Section 455(a) of Title 28 of the U.S. Code provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify [her]self in any proceeding in which h[er] impartiality might reasonably be questioned." Section 455(a) is distinct from, and broader than, the types of bias, prejudice, or interest that require disqualification under Section 455(b). *See Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326, 333 (2d Cir. 1987). "Section 455(a) requires disqualification for the *appearance* of partiality (i.e., when a judge's 'impartiality might reasonably be questioned') as compared to § 455(b)(1), which requires disqualification for *actual* partiality (i.e., when a judge 'has a personal bias or prejudice toward a party')." Charles Gardner Geyh, *Judicial Disqualification: An Analysis of Federal Law* 17 (Federal Judicial Center 2d ed. 2010) (emphasis in original); *see also Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860 (1988) ("The goal of section 455(a) is to avoid even the appearance of partiality. . . . even though no actual partiality exists." (quotations and citations omitted)).

Thus, "what matters is not the reality of bias or prejudice but its appearance. Quite simply and quite universally, recusal [i]s required whenever 'impartiality might reasonably be questioned.'" *Liteky v. United States*, 510 U.S. 540, 548 (1994). Section 455(a) thus "sets up an objective standard for recusal." *In re Int'l Bus. Machines Corp.*, 618 F.2d 923, 928 (2d. Cir. 1980). It asks whether "a reasonable person, knowing all the facts, [would] conclude that the trial judge's impartiality could reasonably be questioned." *United States v. Amico*, 486 F.3d 764,

5

775 (2d Cir. 2007) (quotations omitted).  In applying this standard, close questions are resolved

in favor of disqualification so as to respect Congress's judgment that disqualification is

necessary "whenever a judge's impartiality 'might' reasonably be questioned."  Geyh, *supra*, at

12-13; *see also Amico*, 486 F.3d at 775 n.3.

   Finally, and most importantly here, the "grounds asserted in a recusal motion must be

***scrutinized with care*.**  *In re Certain Underwriter*, 294 F.3d 297, 305 (2d Cir. 2002) (emphasis

supplied).  "[J]udges have an obligation to exercise reasonable effort in avoiding cases in which

they are disqualified" because Section 455 is a "directive" that "require[s] some reasonable

investigation and action" by the judge.  *Chase Manhattan Bank v. Affiliated FM Ins. Co.*, 343

F.3d 120, 130 (2d Cir. 2003).  Respectfully, Your Honor's actions thus far have not satisfied the

Second Circuit's directive to scrutinize the grounds asserted by TRA for recusal with care.

### B. A Judge's Planned Post-Judicial Representation of Parties or Closely-Related Entities Appearing Before Her Creates an Appearance of Partiality.

   The well-settled rule is that "[a]fter the initiation of any discussions with a law firm, no

matter how preliminary or tentative the exploration may be, the judge should recuse on any

matter in which the firm appears."  Pursuit of Post-Judicial Employment, Advisory Op. No. 84

(Judicial Conference Committee on Codes of Conduct June 2009); *see also Pepsico, Inc. v.*

*McMillen*, 764 F.2d 458, 460-461 (7th Cir. 1985) (requiring recusal where headhunter

representing federal judge contacted law firms involved in case regarding potential future

employment).  This rule is equally applicable when, like here, the judge's future professional

relationship is with a party, not a lawyer, involved in the present litigation.  *See Pepsico*, 764

F.2d at 461 (noting that recusal would be appropriate where judge engaged with a "party in the

case" regarding future employment).

   This well-established precedent precludes Your Honor's position that because you have

no current "financial or professional interest in [your future] firm," you "cannot have any conflict of interest or appearance of conflict of interest."  (Ex. F, Brennan Declaration.)  This position impermissibly obscures and conflates Section 455(a) – which focuses on the appearance of partiality – with Section 455(b)(4) – which focuses on actual financial or other interests that could be affected by the litigation.  *See Chase Manhattan*, 343 F.3d at 128 (finding that even though not required under Section 455(b)(4) because the litigation would not "cause any discernible increase in the value of the shares [the judge] owned," recusal was still required under Section 455(a) because of the appearance of partiality).

While perhaps Your Honor's lack of a present "financial or professional interest" makes disqualification under Section 455(b) unwarranted, "[a] fact's failure to give rise to recusal under § 455(b) does not automatically mean that same fact does not create an appearance of partiality under § 455(a). . . . Even where the facts do not suffice for recusal under § 455(b), however, those same facts may be examined as part of an inquiry into whether recusal is mandated under § 455(a)."  *In re Certain Underwriter*, 294 F.3d 297, 305-306 (2d Cir. 2002).  A judge who merely has engaged in discussions with a law firm regarding future employment obviously has no "financial or professional interest" in that firm, and yet the Federal Judicial Conference Committee on Codes of Conduct has concluded that, in these circumstances, "[a]bsent such recusal, a judge's impartiality might reasonably be questioned."  Advisory Opinion No. 84, *supra*.

The proper question, then, is whether "a reasonable person, knowing all the facts, [would] conclude that [Your Honor's] impartiality could reasonably be questioned."  *Amico*, 486 F.3d at 775.  Regretfully, the answer to that question is yes (and, again, any doubt on the question must be resolved in favor of disqualification, Geyh, *supra*, at 12-13).  A judge presiding

over a case involving a party when that party or a closely-related entity will soon be the judge's own client[3] creates "the objective appearance of a conflict of interest requiring disqualification under Section 455(a)."  *See Chase Manhattan*, 343 F.3d at 130; *see also Scott v. United States*, 559 A.2d 745, 750 (D.C. 1989) (en banc) (finding disqualification required, even though judge's prospective employer was at Department of Justice itself, not U.S. Attorney's Office actually prosecuting the case).

This imminent attorney-client relationship "would lead the public reasonably to believe that [it] affected the manner in which [the judge] presided" and to "entertain significant doubt that justice would be done absent recusal."  *See Amico*, 486 F.3d at 775.  A reasonable person would recognize the obvious risk that the judge would decide the case in a way favorable to the soon-to-be client, in order to curry favor with the client, retain existing work from the client, and/or attract additional work from the client.[4]  To paraphrase the Seventh Circuit, "[t]he dignity and independence of the judiciary are diminished when the judge comes before the [parties] in the case in the role of a suppliant for employment.  The public cannot be confident that a case tried under such conditions will be decided in accordance with the highest traditions of the judiciary."  *Pepsico*, 764 F.2d at 461.

In fact, independent of any connection between WPP entities and your future law firm,

---

[3] For these purposes, clients of your future firm are treated as your clients.  *See* Conflicts of Interest Relating to Of Counsel Attorneys, Opinion No. 793 (New York State Bar Association Committee on Professional Ethics March 17, 2006).

[4] To be absolutely clear, TRA in no way suggests that Your Honor actually would allow her future attorney-client relationships to affect the resolution of this case.  However, the Section 455(a) "test deals exclusively with appearances," not actualities, in order to protect "the public's confidence in the impartiality of the judiciary."  *Amico*, 486 F.3d at 775; *see also* Geyh, *supra*, at 17-18 (explaining that resting disqualification on "perceived partiality" protects public confidence in the judiciary and eliminates the need for subjective determinations about the content of the judge's heart and mind).

disqualification also would be warranted to the extent Your Honor had discussions or negotiations, even if unsuccessful, with other law firms that represent parties or their related entities in this litigation.  "[R]ecusal is required when, *at the very time a case is about to go to trial* before a judge, *[s]he is in negotiation-albeit preliminary, tentative, indirect, unintentional, and ultimately unsuccessful*-with a lawyer or law firm or party in the case *over h[er] future employment*."  *Pepsico*, 764 F.2d at 461 (emphasis supplied).  In this situation, "[a] fully informed and objective observer might wonder whether the judge could decide the case with the requisite aloofness and disinterest," or if the judge would instead seek to bolster her chances of being hired by a firm with which she is in negotiations by favoring clients of that firm in litigation pending before her.  *See id*.

The absence of precedent directly addressing this specific situation – where a judge's future clients are parties, or closely related entities, involved in the litigation – is the result of two factors.  First, the circumstances here of a federal judge retiring or resigning to enter private practice are relatively uncommon.  From 1970-2009, only 123 Article III judges (or about three per year) resigned or retired to enter private practice or for similar reasons (inadequate salary, dissatisfaction with job, and other employment).  *See* Stephen B. Burbank et al., *Leaving the Bench 1970–2009: The Choices Federal Judges Make, What Influences Those Choices, and Their Consequences*, 161 U. PA. L. REV. 1, 12–13, 56, 64 (2012).  Second, Section 455(a) cases "are extremely fact driven" and therefore "must be judged on their unique facts and circumstances more than by comparison to situations considered in prior jurisprudence."  *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995) (quotations and alterations omitted).

Kantar's treatment of this matter further demonstrates the danger of ignoring the specific facts and circumstances of the present situation and instead relying on loose comparisons to prior

cases.  In its prior communications with the Court, Kantar suggested that your future law firm's representation of a WPP subsidiary would not require disqualification unless the representation concerned the present matter.  (Ex. B, Brennan Declaration.)  The case Kantar cited, however, is inapposite, as it involved a judge's pre-judicial employment, not a judge's imminent post-judicial employment.  *See Faulkner v. Nat'l Geographic Enterprises Inc.*, 409 F.3d 26, 41 (2d Cir. 2005) (describing recusal motion as based on judge's "past representation of a subsidiary of defendant Kodak").  When someone leaves private practice to join the Article III bench (with its life tenure), a reasonable person would have little worry about the judge currying the favor of a past client.  By contrast, when someone leaves the Article III bench to enter private practice, a reasonable person absolutely would worry that the judge might curry the favor of a soon-to-be client, so as to advance her future law practice and improve her post-judicial career and earnings. It is for this very reason that both the Judicial Conference advisory opinion and precedent require a judge leaving the bench to disqualify herself in cases involving those for whom the judge might soon work.[5]

### C. Your Honor's Future Law Firm Likely Represents Parties, or Closely-Related Entities, to This Litigation.

The WPP conglomerate is composed of over 360 entities, many of which are headquartered or have a significant presence in New York City.  Basic logic suggests that your future "large New York City law firm" represents one or more of these entities.  And to the extent you negotiated or had discussions with other law firms, the odds are even greater that one or more of those firms represents WPP or its related entities.  Indeed, a quick review of publicly-

---

[5] This same rationale requires a judge to disqualify herself if she had any employment discussions with any firms that represent any party, or related entity of any party, in this case, even if those discussions did not lead to actual employment.

available information identified numerous attorney-client relationships between large New York

law firms and WPP entities.[6]

Regardless of whether the specific entity represented by Your Honor's future law firm (or

law firms with which Your Honor negotiated) is involved in this litigation, Your Honor is

obligated to recuse yourself based on the presence of closely-related entities within the WPP

conglomerate.  *See Scott v. United States*, 559 A.2d 745, 750 (D.C. 1989) (en banc) (finding

disqualification required, even though judge's prospective employer was at Department of

Justice itself, not U.S. Attorney's Office actually prosecuting the case).  Again, a quick review of

publicly-available information suggests that WPP entities often share common legal strategy and

representation.[7]  As a result, a judge favoring one specific WPP entity is effectively currying

favor with all of them.  Thus, a reasonable person would question Your Honor's partiality in this

matter not just if a WPP entity specifically involved in this litigation is represented by your

future law firm but rather if any part of the WPP conglomerate is represented by your future law

firm.

---

[6] *See, e.g.*, Maureen Morrison, *WPP Lawyer to Court: Don't Allow Video Into Evidence*, AD AGE (Mar. 17, 2016), http://adage.com/article/agency-news/wpp-lawyers-object-video-inclusion-lawsuit/303181/ (noting that WPP subsidiary JWT represented by New York law firm Davis & Gilbert); Steve McClellan, *JWT Hires Top NY Lawyer To Head Investigation Into CEO Conduct*, MediaPost (Mar. 15, 2016), http://www.mediapost.com/publications/article/271352/jwt-hires-top-ny-lawyer-to-head-investigation-into.html (noting that WPP subsidiary JWT hired New York law firm Proskauer Rose); http://www.kasowitz.com/mitchell-r-schrage/ (bio of attorney at New York law firm Kasowitz who represents WPP subsidiaries Young & Rubicam and Burson Marsteller).

[7] *See, e.g.*, *Berman v. Neo@Ogilvy LLC*, 801 F.3d 145, 145-146 (2015) (noting WPP Group and subsidiary Neo@Ogilvy represented by same counsel and treating them as same entity); Nathalie Tadena, *WPP Hires Outside Law Firm to Investigate Allegations Against JWT CEO*, WALL STREET JOURNAL (Mar. 15, 2016), ("Ad holding giant WPP Plc has hired a prominent labor and employment lawyer to investigate the allegations of sexist and racist behavior by the chief executive of its J. Walter Thompson agency."); *Female Powerbrokers Q&A: Squire Sanders' Caroline Noblet*, LAW360 (Mar. 6, 2014) (explaining that Andrea Harris, lead counsel for WPP PLC, and her team represent "its numerous operating companies").

**D. Your Honor's Choices to Limit Disclosure of Information Related to Your Future Employment Affirms the Need for Disqualification.**

Respectfully, Your Honor's choices regarding your post-judicial employment accentuate the need for disqualification. *See Amico*, 486 F.3d at 776 (finding that judge's own handling of conflict issues confirmed need for disqualification). Unlike some other federal judges who have retired or resigned into private practice, Your Honor chose to accept an employment offer while still on the bench. *Cf.* Jackson Walker LLP, *Judge David Folsom to Lead Jackson Walker Texarkana Office*, http://www.jw.com/press_room/jw_news/1263 (noting that judge joined law firm in May after retiring in March). Although this was Your Honor's prerogative, it necessarily raised a host of problems regarding appearances of partiality, like those present here, that require due consideration and resolution in a manner that maintains public confidence in the judiciary.

Similarly, Your Honor has declined to name your future law firm, again unlike some other federal judges who have accepted positions in private practice before leaving the bench. *See e.g.* Fish & Richardson, *EDTX Federal Judge Davis Joining Fish*, http://www.fr.com/news/edtx-judge-davis/ (publicly announcing in March identity of law firm that judge would join upon retiring in May). This prevents the parties from conducting a reasonable investigation of potential relationships between your future law firm and the parties to this case. Although Your Honor has informed the parties that your future law firm conducted a conflict check on the named parties to this litigation (Ex. D, Brennan Declaration), and will conduct a conflict check regarding WPP subsidiaries (Ex. F, Brennan Declaration), there is no way to independently verify the results. While TRA has no reason to doubt Your Honor's honesty and integrity, it also has no way to check the integrity, quality, and thoroughness of your future law firm's conflicts check. TRA thus is forced to simply accept the unidentified conflict check process of an unidentified (but not disinterested) law firm.

Likewise, although it is reasonable to assume that Your Honor had discussions or negotiations with more than one firm prior to accepting post-judicial employment, Your Honor's decision to keep private all information regarding your search for, and acceptance of, post-judicial employment prevents TRA or other parties appearing before Your Honor, from determining the quantity or identity of the law firms with which you directly or indirectly explored post-judicial employment.  The parties thus are unable to determine potentially disqualifying connections between law firms with which you negotiated and the parties before Your Honor in pending litigation.

A reasonable person would question the impartiality of this process.  Your Honor certainly is within your prerogative to pursue and accept employment while still on the bench, as well as to decline to name your future employer or other potential suitors.  But these actions accentuate the potential appearance of partiality in this matter.  Exercising Your Honor's prerogative to accept employment and not disclose your future employer or other suitors comes with a corresponding duty to steer far clear from any appearances of partiality that might arise from these decisions in your remaining time on the bench.

## IV. CONCLUSION

For the foregoing reasons, TRA respectfully requests that Your Honor recognize your obligation to avoid the appearance of partiality – regardless of any actual bias, prejudice, or interest – and immediately disqualify yourself from this case pursuant to 28 U.S.C. § 455(a). TRA also requests that Your Honor reconsider your prior statement that you will resolve Kantar's motion to dismiss and instead requests that you refrain from making any other determinations in this matter prior to resolving this motion for disqualification.  Any decision made prior to disqualification will be vacated, resulting in a significant waste of judicial and

litigant resources.  *See Chase Manhattan*, 343 F.3d at 132-133.


                                        Respectfully submitted,

 Dated: April 18, 2016


                        By:__/s/ Perry M. Goldberg_____
                                Perry M. Goldberg (*pro hac vice*)
                                PROGRESS LLP
                                11620 Wilshire Blvd., 9th Floor
                                Los Angeles, California 90025
                                Tel: (310) 697-7200
                                Email: goldberg@ProgressLLP.com

                                Lynne M. Brennan (*pro hac vice*)
                                PROGRESS LLP
                                501 W. Broadway, Suite 800
                                San Diego, California 92101
                                Tel: (619) 400-4835
                                Email: lbrennan@ProgressLLP.com

                                *Attorneys for Defendant/Counterclaim-Plaintiff TRA*

                                        14