UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

TNS MEDIA RESEARCH, LLC (d/b/a
KANTAR MEDIA AUDIENCES) and
CAVENDISH SQUARE HOLDING, B.V.,

    Plaintiffs,

- against -

TIVO RESEARCH AND ANALYTICS,
INC. (d/b/a TRA, Inc.),

    Defendant.
------------------------------------------------------X
TIVO RESEARCH AND ANALYTICS,
INC. (d/b/a TRA, Inc.),

    Counterclaim-Plaintiff,

- against -

TNS MEDIA RESEARCH, LLC (d/b/a
KANTAR MEDIA AUDIENCES);
CAVENDISH SQUARE HOLDING, B.V.;
WPP PLC; WPP GROUP USA, INC.;
KANTAR GROUP LTD.; and KANTAR
RETAIL AMERICA, INC.,

    Counterclaim-Defendants.
------------------------------------------------------

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/25/16

**OPINION AND ORDER**

11 Civ. 4039 (SAS)

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

On February 22, 2016, this Court ruled that counterclaim-plaintiff TRA, Inc. ("TRA")'s patents were invalid under section 101 of Title 35 of the United States Code, leaving only TRA's pendent state law claims at issue. On March 22, 2016, counterclaim-defendant Kantar Media Audiences ("Kantar") filed this motion to dismiss, arguing that TRA lacks standing to bring these remaining state law counterclaims.

**I.     BACKGROUND**

While this action primarily concerns the validity and alleged infringement of certain patents owned by TRA, the only issue presently before this Court is whether TRA has standing to pursue its state law claims. In lieu of providing a full rendition of the facts, I provide only those facts relevant to the present motion.

Between 2007 and 2010, Kantar, through its investment arm Cavendish Square Holding B.V. ("Cavendish"), purchased shares of TRA.[1] TiVo invested in TRA in 2009.[2] Both Kantar and TiVo appointed representatives to

---

[1] See Answer, Defenses, and Supplemental and Amended Counterclaims for Patent Infringement, Aiding and Abetting Breach of Fiduciary Duty, Misappropriation of Trade Secrets, and Breach of Contract ("TRA Counterclaims") ¶ 91.

[2] See Sealed Excerpts, Ex. 15 to the 7/3/13 Declaration of Trevor V. Stockinger, counsel to TRA, in Support of TRA's Opposition to Counterclaim-

TRA's board of directors.[3]  In June 2011, Kantar filed suit against TRA seeking, *inter alia*, a declaratory judgment that it had not violated certain of TRA's patents.[4]  In July 2011, TRA filed counterclaims for patent infringement and trade secret misappropriation, breach of contract, and breach of fiduciary duties.[5]  TiVo acquired TRA on July 18, 2012 for $20 million.[6]

Following TiVo's acquisition of TRA, TRA submitted an expert report on damages to the Court.  The damages report valued TRA's non-patent damages on the difference between the $20 million TiVo paid for TRA and the alleged valuation of the company calculated by TRA's expert.  This diminution of value theory of damages is the only theory of damages remaining in the case.

In April 2014, this Court granted Kantar's summary judgment motion, and final judgment was entered in July 2014.[7]  In September 2015, the Federal Circuit affirmed in part and reversed in part this Court's summary judgment ruling,

---

Defendants' Motion for Summary Judgment ("Stockinger Decl."), at 10.

[3]  *See* TRA Counterclaims ¶ 4; Disclosure Schedule 3.1(d), Ex. B to the 3/22/16 Declaration of Eric J. Rutt, counsel to counterclaim-defendants, in Support of Counterclaim-Defendants' Motion to Dismiss TRA's Remaining Claims Under *Bangor Punta*.

[4]  *See* Complaint ¶ 23.

[5]  *See* TRA Counterclaims.

[6]  *See* Sealed Excerpts, Ex. 15 to Stockinger Decl., at 12.

[7]  *See* TNS Media Research, LLC v. TRA Global, Inc., 984 F. Supp. 2d 205 (S.D.N.Y. 2014).

and remanded.[8] On remand, this Court addressed the remaining issues in Kantar's motion for summary judgment and, on February 22, 2016, ruled that TRA's patents were invalid under section 101 of Title 35 of the United States Code.[9] Two weeks later, Kantar sought leave to brief this motion to dismiss the remaining state law claims for lack of standing.

## II.  LEGAL STANDARD

### A.  Rule 12(b)(1) Motion to Dismiss for Lack of Standing

#### 1.  Generally

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."[10]  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."[11]  "Thus, to survive . . . [a] Rule 12(b)(1) motion to dismiss, [a plaintiff] must allege facts that affirmatively and plausibly suggest that it has standing to sue."[12]  However,

---

[8]  *See TNS Media Research, LLC v. Tivo Research & Analytics, Inc.*, No. 2014-1668, 2015 WL 5439002 (Fed. Cir. Sept. 16, 2015).

[9]  *See TNS Media Research, LLC v. Tivo Research & Analytics, Inc.*, No. 11 Civ. 4039, 2016 WL 817447 (S.D.N.Y. Feb. 22, 2016).

[10]  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

[11]  *Id.*

[12]  *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011).

"[w]hen standing is challenged on the basis of the pleadings, we 'accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'"[13] When evaluating a motion to dismiss under Rule 12(b)(1), a district court may refer to evidence outside the pleadings.[14]

### 2. Article III Standing

"Under Article III of the Constitution, the jurisdiction of federal courts is limited to the resolution of 'cases' and 'controversies.'"[15] "In order to ensure that this 'bedrock' case-or-controversy requirement is met, courts require that plaintiffs establish their 'standing' as 'the proper part[ies] to bring' suit."[16] Article III's "irreducible constitutional minimum of standing contains three elements":[17]

> First, the plaintiff must have suffered an 'injury in fact' . . . which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical. . . . Second, . . . the injury has to be fairly trac[eable] to the challenged

---

[13] *United States v. Vazquez*, 145 F.3d 74, 81 (2d Cir. 1998) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)) (further citations omitted).

[14] *See Makarova*, 201 F.3d at 113.

[15] *Amidax*, 671 F.3d at 145 (quoting United States Const. art. III § 2).

[16] *Id.* (quoting *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008) (alteration in original) (further quotation omitted)).

[17] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

> action of the defendant. . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.[18]

## III.   APPLICABLE LAW

Kantar argues that the state law claims in this case should be dismissed for lack of standing under the *Bangor Punta* doctrine. In *Bangor Punta Operations, Inc. v. Bangor & Aroostook R.R. Co.*, the Supreme Court held that a corporation, at the direction of its controlling shareholder, lacked standing to bring an action against a former shareholder of the corporation based on various alleged acts of corporate mismanagement committed by that shareholder prior to the company's acquisition.[19] The Supreme Court observed that:

> [It is a] settled principle of equity that a shareholder may not complain of acts of corporate mismanagement if he acquired his shares from those who participated in or acquiesced in the allegedly wrongful transaction. This principle has been invoked with special force where a shareholder purchases all or substantially all the shares of a corporation from a vendor at a fair price, and then seeks to have the corporation recover against that vendor for prior mismanagement.[20]

The *Bangor Punta* court held that when a purchaser acquired shares after the alleged commission of wrongful acts, and when a purchaser was aware of the

---

[18]   *Id.* at 560-61 (quotation marks and citations omitted) (alterations in original).

[19]   417 U.S. 703, 711-12 (1974).

[20]   *Id.* at 710.

alleged wrongful acts at the time of purchase (that is, the price paid reflected the wrongful acts), then the purchaser incurred no injury, and any recovery would amount to an unearned windfall.[21]  "The court's decision ultimately turn[ed] on its view that the plaintiff in *Bangor Punta*, having paid a fair price for its share, suffered no injury as the result of any earlier mismanagement of the acquired corporation."[22]

This was true even though the action was brought in the name of the corporation, as opposed to the shareholder.  The Court held that, notwithstanding the fact that a corporation and its shareholders are deemed separate entities, courts should decline to "blindly adhere to the corporate form."[23]  If equity barred the principal shareholder from bringing the action, so too did equity bar the corporation from bringing the action — in other words, the shareholder could not use the corporation as a guise to bring the action and engineer a windfall.[24]

Where a federal court possesses subject matter jurisdiction over an

---

[21]  *See id.* at 711 ("[I]t would in effect allow the shareholders to recoup a large part of the price they agreed to pay for their shares, notwithstanding the fact that they received all they had bargained for.").

[22]  *Siegel v. Converters Trans., Inc.*, 714 F.2d 213, 215 (2d Cir. 1983).

[23]  *Bangor Punta*, 417 U.S. at 713.

[24]  *See id.*

action, but the "settled principle of equity"[25] underlying the *Bangor Punta* doctrine applies, the Supreme Court has made clear that claims "should be dismissed for want of equity, and not for want of jurisdiction."[26]  Though a court examines a motion to dismiss under *Bangor Punta* as it would a motion to dismiss for lack of standing, dismissal under these circumstances is "not the denial but the assertion and exercise of jurisdiction."[27]  For that reason, claims dismissed under *Bangor Punta* are dismissed with prejudice.

## IV. DISCUSSION

### A. Waivability of a Standing Defense

As an initial matter, this Court must determine whether Kantar has waived its standing defense by failing to raise its *Bangor Punta* argument at an earlier stage of the action.  TRA argues that I must analyze this procedural question under New York state law, and that New York law dictates that Kantar has waived its standing defense.[28]  That is not the law of this Circuit — courts are required to apply federal procedure when determining whether affirmative defenses have been

---

[25]   *Id.* at 710.

[26]   *Venner v. Great N. Ry. Co.*, 209 U.S. 24, 34 (1908).

[27]   *Id.*

[28]   *See* TRA's Memorandum of Law in Opposition to Kantar's Motion to Dismiss ("TRA Opp.") at 10-13.

waived.[29]

This includes defenses related to prudential standing — such as Kantar's *Bangor Punta* defense. "Federal courts are constrained by our own constitutional limitations, including the non-waivable Article III requirement that we have jurisdiction over the case or controversy before us. Because standing is a critical component of federal jurisdiction, a standing-related defense simply cannot be waived.[30] Indeed, courts are under an independent obligation to address standing issues themselves, even if they are *never* raised by the parties.[31] This applies both to the minimum standing requirements contained in Article III of the United States Constitution, and the "prudential rules of standing that, apart from Art. III's minimum requirements, serve to limit the role of the courts in resolving public disputes."[32] Therefore, because Kantar has not (and could not have) waived its standing argument, I turn to the applicability of the *Bangor Punta* doctrine.

### B. Applicability of the *Bangor Punta* Doctrine

TRA argues that the *Bangor Punta* doctrine cannot apply to this case

---

[29]   *See Santos v. District Council of New York City & Vicinity of United Bhd. of Carpenters & Joiners of Am., AFL-CIO*, 619 F.2d 963, 967 (2d Cir. 1980) (applying federal procedure to question of whether statute of limitations defense had been waived).

[30]   *See Thompson v. County of Franklin*, 15 F.3d 245, 248 (2d Cir. 1994).

[31]   *Id.*

[32]   *Warth v. Seldin*, 422 U.S. 490, 500 (1975).

because TiVo, the 100% owner of TRA's shares, is not a party to this action.[33] However, when adjudicating the applicability of *Bangor Punta*, courts, "piercing all fictions and disguises, will deal with the substance of the action and not blindly adhere to the corporate form."[34]  Regardless of whether a corporation or its parent are named as a party in an action, "a court will pierce the corporate veil and bar a direct action by a corporation when it would only benefit a shareholder who would otherwise be barred [by *Bangor Punta*]."[35]  Therefore, if this Court determines that TiVo would be barred from bringing this action against Kantar under *Bangor Punta*, TRA — its wholly owned subsidiary — is also barred.

    I conclude that because *Bangor Punta* controls this case, TiVo is barred from bringing the remaining claims in this case against Kantar, and TRA is barred by extension.  This action was filed prior to TiVo's purchase of TRA.  In its counterclaims, TRA alleged that it suffered non-patent damages from Kantar's actions, including the theft of its trade secrets, breach of contract, and breach of fiduciary duty.  At the time the suit was brought, TiVo owned shares in TRA, had a representative on TRA's board, and was aware of TRA's allegations against Kantar.  Notwithstanding these allegations and TRA's claimed injury, TiVo

---

[33] TRA Opp. at 13.

[34] *Bangor Punta*, 417 U.S. at 713.

[35] *Koryeo Int'l Corp. v. Hong*, No. 500336/14, 2014 WL 5245382, at *24 (Sup. Ct. N.Y. Co. Oct. 14, 2014).

y
z
a

negotiated for and purchased TRA. Therefore, like the real party in interest in *Bangor Punta*, TiVo has already "received all [it] had bargained for," and any recovery against Kantar would amount to nothing more than a windfall.[36]

This is especially true given TRA's diminution in value theory of damages. Under this theory — TRA's only remaining theory of damages — any recovery against Kantar turns on the $20 million price that TiVo negotiated, set, and paid. To allow TRA to recover from Kantar under these circumstances would reward TiVo for forcing a reduction in TRA's sales price (in part due to TiVo's awareness of the allegations against Kantar) — a form of double recovery that would allow TiVo to recover every cent it paid for TRA. This is the precise situation the *Bangor Punta* doctrine was designed to prevent. TiVo chose to purchase TRA knowing that TRA alleged Kantar had taken actions while a shareholder that harmed the company. TiVo cannot now turn around and sue Kantar for the actions that factored into TRA's purchase price and claim the resulting windfall. Equity demands these claims be dismissed under *Bangor Punta*.

This is true even though only a portion of TiVo's stock in TRA was acquired from Kantar. Even when some of a shareholder's stock was not acquired from an accused wrongdoer, courts have precluded a corporation's recovery under

---

[36] *Bangor Punta*, 417 U.S. at 711.

a

*Bangor Punta* in order to prevent a windfall.[37] This flows naturally from the express purpose of the doctrine: to prevent shareholders from engineering situations where they, by virtue of their control of a corporate entity, can manipulate and capture a windfall. The doctrine is not defendant-centric; it is *plaintiff*-centric. So long as some shares were acquired from the alleged wrongdoer, and so long as the purchaser was aware of the wrongs when it purchased the company, equity demands the action be dismissed.

For similar reasons, the *Bangor Punta* doctrine applies to TRA's claims against all counterclaim-defendants, even those that never possessed shares in TRA. Courts have dismissed claims against defendants who had never owned stock on the ground that another defendant who *had* previously owned stock had "participated with those defendants in the alleged wrongdoing."[38] Here, TRA accuses all counterclaim-defendants of acting in concert; thus, *Bangor Punta* applies to all counterclaim-defendants, even those that did not themselves own shares in TRA.[39]

---

[37]   *See, e.g.*, *Damerow Ford Co. v. Bradshaw*, 876 P.2d 788, 795 (Or. Ct. App. 1994) ("Even if we were to reject the tainted shares rule completely, the related principle [forbidding windfalls] enunciated in *Bangor Punta* bars plaintiff's action.").

[38]   *Id.* at 796-97.

[39]   On April 14, 2016, TRA moved to enter a default against WPP PLC, WPP Group USA, Inc., Kantar Group Ltd., and Kantar Retail America, Inc. and for sanctions, arguing that these former counterclaim-defendants failed to timely

## V. CONCLUSION

For the foregoing reasons, Kantar's motion to dismiss is GRANTED, and TRA's state law claims are dismissed with prejudice. The Clerk of the Court is directed to close this motion (Dkt. No. 229) and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:    New York, New York
          April 25, 2016

---

notify the Court and TRA that they were no longer participating in the action. Kantar replied on April 15, 2016, arguing that TRA failed to include these four parties in its appeal to the Federal Circuit.
    Kantar is correct. The first document on the appellate docket reveals the official case caption identified only two counterclaim-defendants — TNS Media Research, LLC and Cavendish Square Holding, B.V. TRA took no action to amend the caption; the remaining four counterclaim-defendants were never added to the caption; the Federal Circuit's opinions and mandate in this action only applied to the two counterclaim-defendants named in the appeal. TRA's motion for entry of default and sanctions is therefore meritless, and DENIED.
    I note, however, that any post-appeal ruling I have entered or will enter regarding these two remaining counterclaim-defendants applies with equal force to all counterclaim-defendants, should they ultimately be determined to have been part of the appeal.

- Appearances -

**For Defendant and Counterclaim-Plaintiff TRA:**

Perry Mark Goldberg, Esq.
Tanya Acker, Esq.
Goldberg, Lowenstein & Weatherwax LLP
11400 West Olympic Blvd., Suite 400
Los Angeles, CA 90064
(310) 203-9222

Christopher Colvin, Esq.
Kramer Levin Naftalis & Frankel, LLP
1177 Avenue of the Americas
New York, NY 10036
(212) 715-7799

Jay Lefkowitz, Esq.
John Paul Del Monaco, Esq.
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4970

Richard Doyle, Esq.
Jaime Herren, Esq.
Janssen Doyle LLP
140 Brookwood Road, Suite 102
Orinda, CA 94563
(925) 295-1800

**For Plaintiffs and Counterclaim-Defendants the WPP Companies:**

Michael A. Albert, Esq.
John Strand, Esq.
Charles Steenburg, Esq.
Eric Rutt, Esq.
Robert Abrahamsen, Esq.
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Ave.

Boston, MA 02210
(617) 646-8000

Marc Rachman, Esq.
Andrew Keisner, Esq.
Davis & Gilbert LLP
1740 Broadway
New York, NY10019
(212) 468-4800