USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: September 11, 2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X

TNS MEDIA RESEARCH LLC (d/b/a
KANTAR MEDIA AUDIENCES) and
CAVENDISH SQUARE HOLDINGS, B.V.,

        Plaintiffs,

-v-

TIVO RESEARCH AND ANALYTICS,
INC. (d/b/a TRA, INC.),

        Defendant.

------------------------------------------------------------------ X

TIVO RESEARCH AND ANALYTICS,
INC. (d/b/a TRA, INC.),

        Counterclaim-Plaintiff,

-v-

TNS MEDIA RESEARCH LLC (d/b/a
KANTAR MEDIA AUDIENCES) and
CAVENDISH SQUARE HOLDINGS, B.V.;
WPP PLC; WPP GROUP USA, INC.;
KANTAR GROUP LTD; KANTAR RETAIL
AMERICA, INC.,

        Counterclaim-Defendants.

------------------------------------------------------------------ X

11-cv-4039 (KBF)

OPINION & ORDER
(CLAIM CONSTRUCTION)

KATHERINE B. FORREST, District Judge:

On February 1, 2017, this Court held a claim construction hearing on the meaning of the term "at a given time," to which the parties stipulated during an earlier construction of the claim term "purchase data from a purchase data source." TNS Media Research LLC ("Kantar") argues that the ordinary meaning of "at a given time" is "a particular, specific time" and that the prior stipulation is binding.

(Kantar's Claim Construction Br. ("Kantar's Br.") at 5, ECF No. 303.) TiVo Research and Analytics, Inc. ("TRA") responds that "at a given time" simply "requires information reflecting purchases made within a general time period" and that "nothing in the patents imposes a temporal limitation on the 'purchase data' term itself." (TRA Inc.'s Claim Construction Br. ("TRA's Br.") at 2, ECF No. 302.)

For the reasons set forth below, the Court construes the term "at a given time" consistent with its common English usage to mean "at a particular time" or "at a specific time"; it does not mean within a "general time period."

I. BACKGROUND

Kantar initiated this action against TRA on June 15, 2011, seeking a declaratory judgment of non-infringement of U.S. Patent No. 7,729,940 (the "'940 Patent"). (ECF No. 1.) The Honorable Shira A. Scheindlin denied a motion by TRA for a preliminary injunction and proceeded to claim construction. (ECF No. 43.) During claim construction, the parties agreed upon the construction of nine claim terms, including "purchase data from a purchase data source." (ECF No. 51.) Pursuant to the parties' stipulation, which the Court subsequently adopted, "purchase data from a purchase data source" means "data describing the purchase of a particular product <u>at a given time</u>, obtained from a purchase data source, such as a shopping loyalty card, point of sale collection means, or other record of sale of a product or service." (ECF No. 65 (emphasis added).) Following claim construction, the Court granted summary judgment for Kantar because collecting purchase data "requires collecting data that conveys <u>when</u> a purchase was made," and Kantar's

"consumer packaged goods" ("CPG") products "do not make use of temporal data at all." (ECF No. 161 at 83 (emphasis in original).)

On appeal the Federal Circuit affirmed in part and reversed in part. See TNS Media Research, LLC v. TiVo Research and Analytics, Inc., 629 F. App'x 916, 933-35 (Fed. Cir. 2015). As relevant here, the Federal Circuit vacated summary judgment as to Kantar's CPG products because "neither party was afforded the opportunity to present its own claim construction arguments before the district court sua sponte decided the claim construction issue, i.e. how to define 'at a given time' itself." (ECF No. 217 at 41.)

Following remand from the Federal Circuit, the Court held that TRA's patents were ineligible for protection under 35 U.S.C. § 101 and Alice Corp. Pty. Ltd. v. CLS Bank Int'l, 134 S. Ct. 2347 (2014), and therefore did not proceed to construe the term "at a given time." (ECF No. 226.) Due to Judge Scheindlin's retirement from the bench, this case was reassigned to the undersigned on May 10, 2016. (ECF No. 256.) On November 29, 2016, this Court vacated the prior ruling that TRA's patents were ineligible for protection under Alice, thereby reviving the question of how the term "at a given time" should be construed. (ECF No. 294.) The parties have subsequently submitted claim construction briefs on the disputed term. (ECF Nos. 302, 303.)

II. PRINCIPLES OF LAW

   a. Claim construction

Infringement is a factual question, Nystrom v. TREX Co., Inc., 339 F.3d 1347, 1350 (Fed. Cir. 2003), but depends on the meaning and scope of the claimed invention. As a result, a necessary step to reaching the merits of the parties' respective contentions is determining the scope and meaning of the patent claims at issue. See Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996). Claim construction is a question of law for the Court. See id. In construing the meaning of a term, the issue is not what that term would mean to an average lay person, but what that term or phrase would have meant to one "of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc) (citations omitted). A court's job is to try and place itself in the position of one of ordinary skill in the art of the invention(s) at issue.

The claims of a patent define the invention to which a patentee has been given a right to exclude. See Cont'l Paper Bag Co. v. E. Paper Bag Co., 210 U.S. 405, 419 (1908); Phillips, 415 F.3d at 1312. Accordingly, the first and most important reference point for a court is the language of the claims themselves. Merrill v. Yeomans, 94 U.S. 568, 570 (1876); Phillips, 415 F.3d at 1312; NTP, Inc. v. Research in Motion, Ltd., 418 F.3d 1282, 1299 (Fed. Cir. 2005); Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996). Next, the Court may look to intrinsic evidence such as the patent specification and the patent's file history (or "wrapper"). See All Dental Prodx, LLC v. Advantage Dental Prods., Inc., 309 F.3d

774, 780 (Fed. Cir. 2002) (citation omitted) ("Foremost among the tools of claim construction is of course the claim language itself, but other portions of the intrinsic evidence are clearly relevant, including the patent specification and prosecution history."); see also Phillips, 415 F.3d at 1312 ("It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" (citing Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1115 (Fed. Cir. 2004))). If necessary, a court may also use extrinsic evidence in construing claims. See Nazomi Commc'ns, Inc. v. Arm Holdings, PLC, 403 F.3d 1364, 1368 (Fed. Cir. 2005) (instructing courts to look to intrinsic evidence first).

In patents with multiple claims using similar terms, such as the patents-in-suit, it is well accepted that terms in a claim should be construed consistently across claims. Southwall Techs., Inc. v. Cardinal IG Co., 54 F.3d 1570, 1579 (Fed. Cir. 1995) ("[C]laim terms must be interpreted consistently.").

b. Stipulated claim construction

In the context of infringement litigation, parties frequently stipulate as to the construction of some claim terms and have the court decide others. Although claim construction is a matter of law for the court, Markman, 517 U.S. at 372, the court may adopt a stipulated construction if it is not erroneous as a matter of law.[1] The parties in this action long ago stipulated to the claim construction at issue here.

---

[1] The Court, of course, is not required to adopt a stipulated construction. See Exxon Chem. Patents, Inc. v. Lubrizol Corp., 64 F.3d 1553, 1555 (Fed. Cir. 1995) (holding that a "trial judge has an independent obligation to determine the meaning of the claims, notwithstanding the views asserted by the adversary parties.").

A stipulated construction, once adopted by the court, is binding on the parties just the same as any other claim construction. See Digital-Vending Servs. Int'l, LLC v. Univ. of Phoenix, Inc., 672 F.3d 1270, 1278 (Fed. Cir. 2012) (citing SuperGuide Corp. v. DirecTV Enters., Inc., 358 F.3d 870, 889 (Fed. Cir. 2004)); see also Versata Software, Inc. v. SAP Am., Inc., 717 F.3d 1255, 1262 (Fed. Cir. 2013) (holding that defendant "cannot now collaterally attack the claim construction it has agreed to.") (citing Function Media L.L.C. v. Google Inc., 708 F.3d 1310, 1321–22 (Fed. Cir. 2013)). The parties previously construed "purchase data from a purchase data source" to mean "data describing the purchase of a particular product at a given time . . . [.]" (ECF No. 65 (emphasis added).) That construction is binding, was agreed to by the parties, and is not erroneous as a matter of law. Plaintiffs cannot succeed in arguing that the phrase "at a given time" should be omitted entirely from the Court's construction of the claim language.[2]

It so happens, however, that from time to time even the parties' stipulations or a court's claim construction require yet further construction. See TNS Media Research, LLC, 629 F. App'x at 938 ("[P]arties in patent cases frequently stipulate to a construction . . . only to have their dispute evolve to a point where they realize that a further construction is necessary.") (quoting GE Lighting Sols., LLC v. AgiLight, Inc., 750 F.3d 1304, 1310 (Fed. Cir. 2014)). That is so here. "[I]n those

---

[2] The Federal Circuit remanded this case in part so that the parties could have an opportunity to "present [their] own claim construction arguments . . . [on] the claim construction issue, i.e. how to define 'at a given time.'" See TNS Media Research, LLC, 629 F. App'x at 939. The Federal Circuit thus plainly intended for the phrase "at a given time" to be construed by this Court, not removed from the claim construction altogether.

6

cases in which the correct construction of a claim term necessitates a derivative construction of a non-claim term, a court may perform the derivative construction in order to elucidate the claim's meaning." Advanced Fiber Techs. (AFT) Trust v. J & L Fiber Servs., Inc., 674 F.3d 1365, 1373 (Fed. Cir. 2012).

In performing this so-called "derivative construction", the Court must apply "established claim construction principles," just as if it was interpreting claim language in the first instance. See Advanced Fiber Techs., 674 F.3d at 1374. Although this process is often likened to contract interpretation, see Teva Pharm. USA, Inc. v. Sandoz, Inc., 135 S. Ct. 831, 837 (2015), the Court's role is not to interpret the stipulation itself (or the underlying intent of the parties), but rather to determine the proper meaning of the claim language in light of the stipulated construction. See Advanced Fiber Techs., 674 F.3d at 1374 ("[W]hether we are construing a claim term or a disputed term within a claim construction, our ultimate goal is 'determining the meaning and scope of the patent claims asserted to be infringed.'") (quoting Markman, 52 F.3d at 976). The stipulation itself is thus relevant insofar as it informs the initial claim construction at issue. Like the initial claim construction, derivative construction is a matter of law exclusively for the Court.

III. DISCUSSION

Here, the Court's job is to construe the parties' agreed-upon construction of the term "at a given time", recognizing that the term is itself a construction of the claim term "purchase data from a purchase data source." Based on its review of the disputed term, the claim language, and the relevant intrinsic and extrinsic evidence, the Court concludes that the term "at a given time" should be construed to mean "at a particular time" or "at a specific time", but not within a "general time period."

It is well-established that the words of a claim "are generally given their ordinary and customary meaning" as that meaning is understood by a person of ordinary skill in the art. Phillips, 415 F.3d at 1312-13 (quotation and citations omitted). That said, the claim term must be read "in the context of the entire patent, including the specification." Id. at 1313. If it appears, based on a review of the intrinsic evidence, that the inventor has assigned his or her own specialized meaning to a claim term, that specialized meaning may control. See InterDigital Communications, LLC v. International Trade Com'n, 690 F.3d 1318, 1324 (Fed. Cir. 2012) ("The plain meaning of claim language ordinarily controls unless the patentee acts as his own lexicographer and provides a special definition for a particular claim term.") (citing Phillips, 415 F.3d at 1316); see also 3M Innovative Properties Co. v. Avery Dennison Corp., 350 F.3d 1365, 1371 ("[A] definition of a claim term in the specification will prevail over a term's ordinary meaning if the patentee has acted as his own lexicographer and clearly set forth a different definition.").

8

The Court's first step, then, is to determine the "ordinary meaning" of the disputed term. Here, the Court finds that the ordinary meaning of "at a given time", as it would be understood by a person of skill in the art, is clear. See Phillips, 415 F.3d at 1314 ("In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction . . . involves little more than the application of the widely accepted meaning[.]"). During a prior hearing in this matter, Judge Scheindlin equated the terms "at a given time" and "at a particular time." (Tr. of Summ. J. Hr'g ("Tr.") at 31, Nov. 1, 2013, ECF No. 159.) That definition is consistent with the dictionary definition of "given," which means "stated, fixed, or specified." (Kantar's Br. at 6.) The Court thus concludes that the ordinary meaning of the term "at a given time" is "at a particular time."

The second step is to determine whether that ordinary meaning is at odds with the specification or purpose of the invention, thereby indicating that the term should be assigned a specialized meaning. See Markman, 52 F.3d at 980 ("[A] patentee is free to be his own lexicographer. The caveat is that any special definition given to a word must be clearly defined in the specification.") Here, the ordinary meaning of "at a given time" is consistent with the specification and purpose of the claimed invention. First, the common specification of the patents-in-suit contains two figures—12 and 25—that specifically reference the "transaction date" of a purchase. See, e.g., '940 Patent, figs. 12, 25. This supports a construction of the claim term "purchase data" that includes the specific transaction date or

9

particular time of purchase.  Furthermore, an express purpose of the claimed invention is to create return on investment ("ROI") metrics based on the collected data.  See, e.g., '940 Patent, col. 52, ll. 8-10.  In order to effectively calculate and analyze ROI based on purchase data, it is necessary to know when a particular purchase was made.  Otherwise, it would be impossible to attribute the purchase to any particular advertisement or stimulus as contemplated by the patents-in-suit.  At the very least, the intrinsic evidence does not signal clear disavowal of the ordinary meaning of the term "at a given time," and thus that ordinary meaning controls.

Finally, contextual clues in the Court's previous construction suggest that the term "at a given time" includes a specific temporal component.  The claim term "purchase data source" was construed to include "shopping loyalty card, point of sale collection means, or other record of sale of a product or service."  (ECF No. 65.)  All three of the sources referenced would certainly track the specific date of purchase.  Accordingly, it makes sense that the "purchase data" collected would include that specific or "particular" transaction date—not a vague and "general" purchase time period, which would not be collected by the indicated sources.

IV.  CONCLUSION

The Court concludes that the disputed term "at a given time" should be given its plain and ordinary meaning—"at a particular time."  Combined with the previously agreed-upon construction of the claim language at issue, "purchase data from a purchase data source" is hereby construed to mean "data describing the purchase of a particular product at a particular time, obtained from a purchase data

10

source, such as a shopping loyalty card, point of sale collection means, or other record of sale of a product or service."

SO ORDERED.

Dated:     New York, New York
           September 11, 2017

                                              _____
                                              KATHERINE B. FORREST
                                              United States District Judge