USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: May 18, 2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
TNS MEDIA RESEARCH LLC (d/b/a
KANTAR MEDIA AUDIENCES) and
CAVENDISH SQUARE HOLDINGS, B.V.,
            Plaintiffs,

-v-

TIVO RESEARCH AND ANALYTICS,
INC. (d/b/a TRA, INC.),
            Defendant.
------------------------------------------------------------------X
TIVO RESEARCH AND ANALYTICS,
INC. (d/b/a TRA, INC.),
            Counterclaim-Plaintiff,

-v-

TNS MEDIA RESEARCH LLC (d/b/a
KANTAR MEDIA AUDIENCES),
CAVENDISH SQUARE HOLDINGS, B.V.,
WPP PLC, WPP GROUP USA, INC.,
KANTAR GROUP LTD., and KANTAR
RETAIL AMERICA, INC.,
            Counterclaim-Defendants.
------------------------------------------------------------------X

11-cv-4039 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

After more than six years, two judges, countless written opinions, and a Federal Circuit appeal, this case ended not with a bang but a whimper when the parties stipulated to entry of final judgment on December 28, 2017. And for all of its efforts to assert patent infringement and prove non-patent damages, TRA, Inc. ("TRA") ultimately recovered nothing. Now, the Court is called upon to determine whether counterclaim-defendants are entitled to recover attorneys' fees incurred in defending TRA's meritless patent claims. The Court concludes that they are.

I.   BACKGROUND

As alluded to above, this case has a long and complicated history. What follows is a brief recitation of the facts most relevant to the pending motion for attorneys' fees.

   A.   Complaint, Counterclaims, and Preliminary Injunction

This case originally commenced, as so many patent cases do, as an action for declaratory judgment of non-infringement. On June 14, 2011, TNS Media Research, LLC ("Kantar") and Cavendish Square Holding, B.V. ("Cavendish") (collectively, "Kantar") initiated this action against TiVo Research and Analytics, Inc. ("TRA"). (ECF No. 1.) Kantar sought a declaratory judgment of non-infringement of U.S. Patent No. 7,729,940 ("the '940 Patent"), which claims, in sum, a method of measuring and analyzing return on investment ("ROI") for certain advertising campaigns.

In response, TRA asserted the following counterclaims: (1) infringement of the '940 Patent; (2) misappropriation of trade secrets; (3) aiding and abetting breach of fiduciary duty; and (4) breach of contract. (ECF No. 10.) That same day, TRA moved for a preliminary injunction preventing Kantar from "making, selling, and offering for sale" its allegedly infringing products. (ECF No. 11.) Kantar opposed, arguing, inter alia, that the '940 Patent was invalid and that in any event, its products did not infringe the disputed claim terms. (ECF No. 31.) Judge Shira A. Scheindlin[1] subsequently issued an Opinion & Order denying TRA's motion for a

---

[1] This case was originally assigned to Judge Scheindlin. It was transferred to the undersigned on May 10, 2016 following Judge Scheindlin's retirement from the bench. (ECF No. 256.)

preliminary injunction, holding that Kantar had "raised a substantial question about the validity of Claim 71 of the '940 Patent." See generally TNS Media Research, LLC v. TRA Glob., Inc., 2011 WL 4425415 at *6 (S.D.N.Y. Sept. 22, 2011) ("TNS I").

On June 6, 2012, TRA amended its counterclaims to allege infringement of two additional patents—U.S. Patent Nos. 8,000,993 ("the '993 Patent") and 8,112,301 ("the '301 Patent") (together with the '904 Patent, the "Patents-in-Suit"). (ECF No. 75.) Both the '993 Patent and '301 Patent were issued subsequent to TRA's original answer (on August 16, 2011 and February 7, 2012, respectively), and both claimed, in sum, a method of using consumer purchasing behavior for television targeting. (Id.) As the Court has previously observed, this case has "had a modestly tortured history thereafter."

B. Summary Judgment and Appeal

On November 25, 2013, following claim construction proceedings, Judge Scheindlin issued an Opinion & Order granting Kantar's motion for partial summary judgment. See generally TNS Media Research, LLC v. TRA Glob., Inc., 984 F. Supp. 2d 205 (S.D.N.Y. Nov. 25, 2013) ("TNS II"). Judge Scheindlin held, inter alia, that the Accused Products[2] did not infringe the Patents-in-Suit, thereby mooting the issue of patent invalidity.[3]

---

[2] The "Accused Products" are Kantar's Auto Products (comprising RapidView Auto and Charter with Audio) and Consumer Packaged Goods ("CPG") Products (comprising RapidView Retail, RapidView for Retail, and Charter with CPG).

[3] Subsequent to Judge Scheindlin's non-infringement decision, Kantar moved for attorneys' fees pursuant to 35 U.S.C. § 285. (ECF No. 191.) After allowing full briefing on that issue, and during the pendency of TRA's Federal Circuit appeal, Judge Scheindlin granted Kantar's motion for fees on November 4, 2014. (ECF No. 204.) The parties then stipulated to the quantum of attorneys' fees

TRA appealed, and on September 16, 2015, the Court of Appeals for the Federal Circuit issued an Opinion affirming in part and vacating part Judge Scheindlin's non-infringement ruling. See TNS Media Research, LLC v. Tivo Research & Analytics, Inc., 629 F. App'x 916 (Fed. Cir. 2015) ("TNS III"). Specifically, the Federal Circuit held that summary judgment was appropriate as to one subset of the Accused Products (the "Auto Products"), but not the other (the "CPG Products"). In doing so, the Federal Circuit disagreed with Judge Scheindlin's construction of the disputed term "at a given time," and remanded for further proceedings.[4]

C.  Invalidity Proceedings

While Judge Scheindlin's non-infringement ruling was on appeal, the Supreme Court decided Alice Corp. Pty. v. CLS Bank Int'l, 134 S. Ct. 2347 (2014), which opened the floodgates for so-called "Alice Motions" seeking a determination of patent ineligibility under 35 U.S.C. § 101. Relying on Alice, Kantar once again moved for summary judgment on December 28, 2015[5], arguing that TRA's claims were dependent on non-patentable "abstract ideas." (ECF No. 219.) Judge Scheindlin agreed, and on February 22, 2016 issued an Opinion & Order concluding that TRA's claims were ineligible for patent protection under Alice. See TNS Media

---

payable by TRA in the event the Federal Circuit upheld Judge Scheindlin's decisions. (ECF No. 209.)

[4] As a consequence of the Federal Circuit's decision to remand, Judge Scheindlin's decision granting Kantar's motion for attorneys' fees was also vacated.

[5] Technically, Kantar's Alice argument was added as a supplemental basis for judgment to an already pending second motion for summary judgment.

4

Research, LLC v. Tivo Research & Analytics, Inc., 166 F. Supp. 3d 432 (S.D.N.Y. Feb. 22, 2016) ("TNS IV").

As previously noted, Judge Scheindlin retired from the bench in 2016 and this case was reassigned to the undersigned. On June 24, 2016, this Court issued an order stating that, in the interests of justice, it would reconsider Judge Scheindlin's February 22, 2016 Alice Opinion on patent eligibility. (ECF No. 270.) Subsequently, on November 29, 2016, this Court vacated the February 22 Alice Opinion, concluding that although Judge Scheindlin's ruling "was a reasoned attempt to follow . . . somewhat confused law," subsequent decisions issued by the Federal Circuit had clarified Alice in a way that undercut that Opinion's core reasoning. See TNS Media Research LLC v. TiVo Research & Analytics, Inc., 223 F. Supp. 3d 168 (S.D.N.Y. Nov. 29, 2016) ("TNS V").

### D. Claim Construction and Final Judgment

On December 15, 2016, the Court directed the parties to brief their respective positions regarding construction of the disputed term "at a given time," which was one of the open issues following the Federal Circuit's remand in TNS III. After full briefing and some back and forth with the parties, the Court issued an Opinion & Order on September 11, 2017 construing the disputed term in Kantar's favor. See TNS Media Research LLC v. TiVo Research & Analytics, Inc., 2017 WL 4045008 (S.D.N.Y. Sept. 11, 2017) ("TNS VI"). Shortly thereafter, and in light of the Court's claim construction ruling, the parties entered a stipulation of non-infringement. (ECF No. 332.)

On December 28, 2017, the parties entered a stipulation dismissing TRA's remaining state law claims and allowing for entry of final judgment. (ECF No. 333.) Final judgment was issued pursuant to that stipulation the very same day. (ECF No. 334.) Although both parties "expressly reserve[d] the right to appeal from the stipulated Final Judgment and to seek appellate review of any appealable orders of this Court," neither party has appealed. (Id. ¶ 4.)

E. Kantar's Motion for Attorneys' Fees

On January 11, 2018, Kantar moved for attorneys' fees pursuant to Section 285 of the Patent Act, 35 U.S.C. § 285.[6] (ECF No. 336.) In support of that motion, Kantar has argued, in sum, that the relative weakness of TRA's various arguments throughout the course of this litigation renders this an "exceptional case," thereby justifying an award of fees. (See generally Defs.' Mem. in Supp. ("Kantar Mem."), ECF No. 337.) TRA opposed that motion on February 8, 2018, arguing that its litigation position was sufficiently strong, and that nothing about this litigation is "exceptional." (See generally TRA's Mem. in Opp'n ("TRA Opp'n"), ECF No. 341.) Kantar replied on March 1, 2018 (ECF No. 342), and this matter is now fully briefed.

II. LEGAL PRINCIPLES

In "exceptional cases," a district court "may award reasonable attorney fees to the prevailing party" pursuant to the Patent Act. See 35 U.S.C. § 285. An

---

[6] As a condition of the stipulation of final judgment, Kantar agreed not to seek attorneys' fees incurred in defending TRA's non-patent claims. (ECF No. 333 ¶ 6.) In accordance therewith, Kantar has not sought attorneys' fees related to the non-patent claims in the present motion.

6

"exceptional case" is "simply one that stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated." Octane Fitness, LLC v. ICON Health & Fitness, Inc., 134 S. Ct. 1749, 1756 (2014); see also Highmark Inc. v. Allcare Health Mgmt. Sys., Inc., 134 S. Ct. 1744, 1748 (2014) (noting that "the word 'exceptional' in § 285 should be interpreted in accordance with its ordinary meaning" (citing Octane Fitness, 134 S. Ct. at 1755)).  Notably, it is not necessary that the litigation conduct at issue be independently sanctionable, e.g. because it involves bad faith or some other misconduct.  See id. at 1756-57 (holding that "a district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees").

District courts must determine whether any particular case is "exceptional" in a "case-by-case exercise of their discretion, considering the totality of the circumstances." Octane Fitness, 134 S. Ct. at 1756.  Whether a case is "exceptional" or not "is a factual determination," Forcillo v. Lemond Fitness, Inc., 168 Fed. App'x 429, 430 (Fed. Cir. 2006), and the court must make its discretionary determination by a "preponderance of the evidence," Octane Fitness, 134 S. Ct. at 1758 (rejecting the prior requirement that a patent litigant establish its entitlement to fees under § 285 by "clear and convincing" evidence).  A district court's determination of whether a case is "exceptional" under § 285 is reviewed for abuse of discretion.  See Highmark Inc., 134 S. Ct. at 1748; see also Checkpoint Sys., Inc. v. All-Tag Sec.

7

S.A., 858 F.3d 1371, 1374 (Fed. Cir. 2017) ("On appeal, all aspects of a district court's § 285 determination are reviewed for an abuse of discretion." (citation omitted)).

In assessing the "totality of the circumstances," courts may consider factors such as "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." Octane Fitness, 134 S. Ct. at 1756 n.6 (citing Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n.9 (1994), which dealt with a similar fee-shifting provision in the Copyright Act). Further, as previously noted, Octane Fitness made clear that a party's conduct need not be independently sanctionable to warrant an award of fees under § 285. Id. at 1756-57. That said, courts have cautioned that fee awards should not be used "as a penalty for failure to win a patent infringement suit." See id. at 1753 (quotation omitted); see also Checkpoint Sys., Inc., 858 F.3d at 1376.

III. DISCUSSION

This case was transferred to the undersigned after a majority of the arguments giving rise to the pending motion had already been raised and dismissed. As such, the Court stands in a somewhat unique position regarding determination of whether the totality of TRA's litigation conduct was "exceptional" under § 285. That being said, the Court is intimately familiar with the record, the controlling law, and the various arguments advanced by the parties throughout this litigation. And having considered the totality of the circumstances, the Court

concludes that TRA's patent-related litigation conduct was "exceptional," and that Kantar is entitled to attorneys' fees as a result.

As an initial matter, TRA is correct in noting that patent cases are very often "long, expensive, and complex." (See TRA's Mem. in Opp'n ("TRA Opp'n") at 6, ECF No. 341.) But that is not the issue here—the issue is that this <u>particular</u> patent case should not have been. There is a fine line between creative, vigorous advocacy and the advancement of frivolous and/or non-dispositive arguments that do nothing but artificially prolong meritless litigation. In this instance, TRA crossed that line.

Kantar has provided numerous examples of legal arguments and conduct that allegedly demonstrate the "exceptional" nature of this case. And while it is very likely that none of those examples, standing alone, warrant an award of fees under § 285, the totality of the circumstances make clear that TRA acted in an "exceptional" manner in prolonging this litigation. To be sure, TRA was well within its rights to assert infringement in response to Kantar's original complaint. But it was clear (or at the very least should have been clear) from an early point that TRA would not have a valid infringement case against the Accused Products. In that regard, this action stands out from the rest for purposes of § 285.

The problematic nature of TRA's litigation position can be traced back to the preliminary injunction stage, where TRA argued that the claim limitation "[applying a] cleansing and editing algorithm to the matched and stored data" should be construed to allow for the algorithm to be applied <u>before</u> the data was matched and stored—<u>e.g.</u>, that the claim language did not require a particular

9

sequence. (See ECF No. 37 at 7-8.) That argument was designed to undercut sworn testimony by Kantar's President that its product made corrections to the various data sets before matching them. (See ECF No. 31 at 11-12.) Judge Scheindlin, however, rejected TRA's proposed construction, holding that it did "violence to the ordinary grammatical understanding of the past tense." See TNS I at *5.

Although Judge Scheindlin's preliminary injunction decision did not include a holding of non-infringement (and therefore did not rely on the rejected construction described above), it should have been obvious from that point that TRA could not and would not succeed in asserting the '940 Patent. The issue is therefore not only TRA's decision to advance a frivolous construction, but also (and more importantly), TRA's failure to recognize that the rejected construction doomed its infringement case.

Instead of abandoning the '940 Patent, TRA doubled down by advancing a second frivolous construction of the "cleansing and editing" limitation, one that effectively sought to recapture claim scope that TRA had been forced to surrender during patent prosecution. (See ECF No. 89 at 40-41 ("TRA should not now be permitted to adopt a construction that undoes th[e] prosecution history.").) Prosecution history estoppel is a well-established rule of claim construction, and TRA's argument as to the critical "cleansing an editing" limitation was exceptionally weak. That is true even though TRA found some limited support for its position in the specification. It may be the case that in many instances the prosecution history "lacks the clarity of the specification," Phillips v. AWH Corp.,

10

415 F.3d 1303, 1317 (Fed. Cir. 2005), but this was not one of those instances.  Judge Scheindlin clearly held that TRA's proposed construction was an attempt to recapture disclaimed scope[7], and the undersigned agrees.

Still undeterred, however, TRA compounded its two frivolous claim construction arguments with a frivolous infringement theory that improperly sought to reverse a stipulated (and court-ordered) construction of the specification term "false positive."  During claim construction, both parties agreed that a particular cleansing and editing algorithm described in the specification—the so-called "false positive" algorithm—removes "data collected from a set-top box that remains on <u>even though the associated television has been turned off</u>." (ECF No. 89 at 39 (emphasis added).)  In opposing Kantar's motion for summary judgment, however, TRA argued that the Kantar products run "false positive" algorithms to correct data collected not from a television that has been turned off, but rather from viewers who "did not watch enough of a program to be reliably counted within a sample." (<u>See</u> ECF No. 136 at 29.)  TRA advanced this argument even though Judge Scheindlin had specifically warned the parties not to ignore previously construed terms.  (<u>See</u> ECF No. 204 at 31 n.130.)  The argument was therefore not only frivolous, but also in direct contravention of multiple court orders.

TRA now argues that the parties never in fact stipulated to the term "false positive," and that the agreed-upon definition recited in the Court's claim

---

[7] In granting Kantar's motion for fees prior to the Federal Circuit remand, Judge Scheindlin held that "TRA had attempted to undo that which the PTO had required TRA to amend in order to obtain its patent," and that "[t]his attempt to undo the prosecution history vitiates any reasonableness or cooperation otherwise demonstrated by TRA during claim construction."  (ECF No. 204 at 30.)

11

construction order was merely one example of a "false positive" algorithm. (See TRA Opp'n at 16-17.) As an initial matter, that argument is a marked departure from TRA's previous argument that its attempt to circumvent the "false positive" construction was "inconsequential" and "an unimportant issue." (See ECF No. 198 at 8.) But more importantly (and somewhat ironically), TRA's new argument is frivolous. The specification of the '940 Patent clearly equates "false positive editing" with "correct[ing] for <u>the phenomenon</u> of DSTB powered up when the television connected to the DSTB is powered down." (See '940 Patent col. 5:43-46 (emphasis added).) That is consistent with the agreed-upon construction contained in the Court's order, which unequivocally refers to "<u>the</u> 'false positive' problem" as relating to "data collected from a set-top box that remains on even though the associated television has been turned off." (ECF No. 89 at 39 (emphasis added).) There may be other examples of cleansing and editing algorithms, but a "false positive" algorithm clearly corrects for the type of issue asserted by Kantar.[8]

In many respects, TRA's newest argument regarding the "false positive" term is emblematic of the types of arguments that have rendered this case, under the totality of the circumstances, "exceptional." The argument is not extralegal or obviously made in bad faith, but it is nonetheless frivolous upon even the most cursory review. It is not completely unheard of for counsel in a complex litigation matter to employ a "spaghetti on the wall" approach (just hoping that something

---

[8] The Court additionally notes that the '940 Patent appears to assign an entirely different term—"channel surfing"—to the type of algorithm described by TRA, where viewers do not watch a program for long enough to be counted within a sample. (See '940 Patent col. 15:51-16:4.)

will stick), but in the patent context such conduct is subject to an award of fees under § 285. TRA may not have been legally obligated to refrain from making the arguments listed above, and may not even be subject to independent sanctions for raising them, but the Court concludes that the totality of TRA's litigation conduct has been "exceptional," and thus subject to fee-shifting under § 285.

Although the above-referenced problems warrant special mention, there have been various other issues with the substantive strength of TRA's patent-related arguments throughout the course of this litigation. Many of those issues were identified and relied upon by Judge Scheindlin in granting Kantar's initial motion for fees. (See ECF No. 204). The undersigned has reviewed all of the relevant briefs, transcripts, and legal arguments, and agrees in sum and substance with Judge Scheindlin's carefully-reasoned conclusion that TRA's conduct was "exceptional." For purposes of clarity (and at risk of belaboring the issue), the additional problems include:

- The paucity of evidence, unpersuasive legal arguments, and speculation advanced by TRA in support of its allegations regarding the Auto Products and double-blind matching. (See ECF No. 204 at 35-36; see also TNS III, 629 Fed. App'x at 941 ("There is simply no evidence that Experian utilizes double blind matching for Kantar's Auto Products.").)
- TRA's untimely assertion of the doctrine of equivalents as the basis for infringement of the "purchase data" limitation. (See ECF No. 204 at 34-35.)

13

- TRA's baseless judicial estoppel argument relating to the Court's preliminary injunction decision. (See ECF No. 204 at 33-34.)

TRA argues, at various points and in various ways, that because it advanced some meritorious arguments (and indeed won certain issues, both at the district court level and on appeal), it should not be subject to an award of fees under § 285. Similarly, TRA argues that any award of fees must be limited to "the part of the case to which the arguments or conduct giving rise to the exceptional case finding relates." (See TRA Opp'n at 24.) Both arguments are unavailing. First, § 285 requires that the Court consider the "totality of the circumstances," and does not call for the type of piecemeal review that TRA would apparently prefer. It is clearly true that certain of TRA's arguments, in isolation, prevailed over Kantar's. But that does not change the fact that TRA repeatedly advanced frivolous, time consuming arguments that unduly burdened Kantar (and the Court) and artificially prolonged this litigation. Having reviewed the totality of the circumstances, including TRA's isolated litigation "wins," the Court concludes that TRA's patent-related litigation conduct was nonetheless "exceptional" for purposes of § 285.

Further, TRA's exceptional conduct pervaded this litigation. In <u>Homeland Housewares, LLC v. Sorensen Research</u>, 581 F. App'x 877, 881 (Fed. Cir. 2014), the Federal Circuit held that because it is "the 'totality of the circumstances,' and not just discrete acts of litigation conduct, that justify the court's award of fees" under § 285, a court need not engage in granular analysis of which fees were incurred in responding to specific acts of alleged misconduct. That principle is applicable here.

14

Although the Court has identified specific examples of conduct and arguments that it considers "exceptional," it is the <u>totality</u> of the circumstances that have justified an award of fees under § 285.

IV. CONCLUSION

For the reasons stated above, the Court hereby GRANTS Kantar's motion for attorneys' fees and non-taxable expenses incurred defending against TRA's patent claims, as well as allowable post-judgement interest. Kantar is directed to submit a detailed request for the fees and expenses incurred defending against TRA's patent claims not later than **Monday, June 11, 2018**.

SO ORDERED.

Dated: New York, New York
May 18, 2018

_____
KATHERINE B. FORREST
United States District Judge